[PHILADELPHIA, APRIL 2D, 1840.]

COMFORT and Others, *against* THE COMMONWEALTH.

IN ERROR.

In case of resistance by a defendant to a constable, in the service of a *capias ad respondendum* for debt, issued by a justice of the peace, under the act of the 20th of March, 1810, the constable may raise the power of the county for his assistance, in the same manner as the sheriff may on writs of mesne process to him directed; and a person refusing to assist the constable when required, on resistance being made, is indictable for such refusal.

ERROR to the Quarter Sessions of the county of Bucks.

John Comfort, Ezra Comfort, John Kitchen, Thomas Kitchen, and William Kitchen, Jun'r., were indicted at the September Sessions, 1839, of that court, for refusal to aid a constable in the execution of mesne process.

The indictment, which set out all the material facts, was as follows:

"The Grand Inquest of the Commonwealth of Pennsylvania, inquiring for the county of Bucks, upon their oaths and solemn affirmations respectively, do present, that Daniel Poor, then and there being one of the justices of the peace in and for the county of Bucks, duly commissioned, qualified and empowered to perform the duties of that office, and being so commissioned, qualified and empowered, did, on the twenty-ninth day of May, one thousand eight hundred and thirty-nine, at the said county, then and there

make his certain writ in writing under his hand and seal, directed to the constable of the borough of Newhope, or to the next constable of the said county, most convenient to the defendant, in the county aforesaid; by which said writ the constable aforesaid was commanded to take John Hulsey, of Solesbury township, in the said county, and bring him before the subscriber, a justice of the peace of said county, forthwith on the service thereof, to answer Levi Stout in a plea of debt not exceeding one hundred dollars, and that should be his warrant; which said writ was afterwards, to wit, on the thirtieth day of May, one thousand eight hundred and thirty-nine, delivered to one Samuel H. Potts, town constable of the borough of Newhope, in the said county, duly elected, appointed and qualified to perform the duties of that office, to be by him executed in due form of law, and that the said Samuel H. Potts so being town constable as aforesaid, afterwards to wit, on the fourth day of June, in the year of our Lord one thousand eight hundred and thirty-nine, by virtue of the said writ did then and there at the county aforesaid, and within the jurisdiction of this court, take and arrest the said John Hulsey, and him the said John Hulsey the said Samuel H. Potts, in his custody, by virtue of the said writ then and there had, and that the said John Hulsey did then and there at the county aforesaid, on the day and year last aforesaid, with force and arms violently, forcibly and unlawfully resist and obstruct the said Samuel H. Potts in the due execution of his said office, and attempt to escape from his lawful custody and go at large, contrary to the will of the said Samuel H. Potts, and that he, the said Samuel H. Potts being such town constable as aforesaid, thereupon did then and there on the day and year last aforesaid, at the county aforesaid, and within the jurisdiction of this court, in his proper person apply to John Comfort, Ezra Comfort, John Kitchen, Thomas Kitchen, and William Kitchen, Jr., all late of the township of Solebury, in the said county, yeomen, and they the said John Comfort, Ezra Comfort, John Kitchen, Thomas Kitchen, and William Kitchen, Jr. all being then and there present, and in the name of the commonwealth of Pennsylvania, did then and there on the day and year last aforesaid, at the county aforesaid, charge and require them, the said John Comfort, Ezra Comfort, John Kitchen, Thomas Kitchen, and William Kitchen, Jr. to aid and assist him in the preservation of the peace of the said commonwealth, and for the securing the said John Hulsey, and for preventing the said John Hulsey from effecting his escape from and out of the lawful custody of him, the said Samuel H. Potts; he, the said Samuel H. Potts being then and there such town constable, as aforesaid, in the due execution of his said office, in conveying the said John Hulsey before the said justice of the peace, to be dealt with according to law. Yet the said John Comfort, Ezra Comfort, John Kitchen, Thomas Kitchen, and William Kitchen, Jr. all being then and there duly informed that the

(Comfort v. Commonwealth.)

said Samuel H. Potts was such town constable, as aforesaid, and well knowing the same, and that he, the said Samuel H. Potts was in the due execution of his said office; and not regarding their duty in that respect, to wit, on the day and year last aforesaid, to wit, at the county aforesaid, and within the jurisdiction of the court, with force and arms, unlawfully, obstinately and contemptuously did neglect and refuse to aid and assist him, the said Samuel H. Potts, for the purpose and on the occasion aforesaid, in the manner they, the said John Comfort, Ezra Comfort, John Kitchen, Thomas Kitchen, and William Kitchen, Jr. were charged and required to do as aforesaid, or in any other manner whatever; contrary to their duty in that behalf; whereby the said John Hulsey did then and there, to wit, on the day and year last aforesaid, at the county aforesaid, and within the jurisdiction of this court effect his escape from and out of the lawful custody of him, the said Samuel H. Potts, and against the will of the said Samuel H. Potts, he, the said Samuel H. Potts being then and there such town constable as aforesaid, and in the due execution of his said office, and did go at large in manifest contempt of our said commonwealth and her laws; to the great hindrance of justice, to the evil example of all others in like manner offending, contrary to the act of assembly, in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania."

The defendants pleaded not guilty to the indictment; and a jury having been empannelled to try the same, rendered a verdict of guilty.

The counsel for the defendants thereupon filed the following reasons in arrest of judgment.

" 1st. The indictment does not set forth a criminal offence.

2d. It is not an indictable offence to refuse to aid an officer charged with the execution of mesne process in a civil suit."

The court overruled the reasons in arrest of judgment, and pronounced sentence on the defendants; who thereupon sued out this writ, and assigned for error that the court erred in overruling the reasons in arrest of judgment.

, Mr. *Ross*, for the plaintiffs in error argued that under the laws of Pennsylvania, a constable had no authority to call upon the people to aid him in the execution of civil process. He referred to 6 *Bac. Abr.* 169. *Cro. Jac.* 419. 3 *Lev.* 46. 1 *Strange*, 435. *Act of* 15*th April*, 1834.

Mr. *Wright*, for the commonwealth, referred to 3 *Toml. Law Dict.* 184. 2 *Stark. Evid.* 810, 811. 2 *Chitty Crim. Law*, 144. *Act of* 21*st March*, 1772, § 6.

(Comfort *v.* Commonwealth.)

The opinion of the court was delivered by

SERGEANT, J.——The question raised on this indictment is, whether in case of resistance by a defendant to a constable in the service of a *capias ad respondendum* in debt, issued by a justice of the peace under the act of assembly of the 20th March,·1810, the constable may raise the *posse comitatus* or power of the county, for his assistance, in the same manner as the sheriff may in writs of mesne process to him directed; and whether a person refusing to assist the constable when required, on resistance being made, is indictable for refusal. This is a power so necessary to the peacable administration of justice, that unless there be some explicit rule to the contrary, the law ought to uphold and maintain the exercise of it, as well by the constable as by the sheriff or any other officer employed to execute process. The jurisdiction of magistrates in civil suits, has, of late years, been much extended in this state; so that controversies of considerable importance are now placed in their hands, which were formerly confined to the courts. Their ministers of justice are the constables. There is as much reason why constables, in enforcing the law, should be invested with the power necessary to put down resistance and preserve the peace, as there can be in the instance of sheriffs. Acquiescence in the laws is the duty of every citizen; and in a government of laws, such as ours emphatically is, it is the duty of every citizen to aid in their execution.. If the constable can call no aid that will overawe resistance, then any defendant who is·strong enough to defy him, may baffle the⁷ law with impunity, or bring on a hazardous and useless conflict for personal superiority.

In regard to the sheriff, the law has been long well settled. He may raise the *posse comitatus* or power of the county; that is, such a number of men as are necessary for his assistance in the execution of the king's writs, quelling riots, &c.; and every person above the age of fifteen, not aged or decrepid, *is bound to be aiding; and if they* refuse to assist, may be punished by fine and imprisonment. 6 *Bac. Abr.* 169. The sheriff is obliged to do this on writs of execution; and although he is not obliged to do it on writs of mesne process, yet he may take the *posse* to serve mesne process. *Ib.* This power is not confined to the sheriff himself; it is likewise given to his bailiff or other minister of justice, having the execution of the king's writs; who being resisted in endeavouring to execute the same, may lawfully raise such a force as may effectually enable them to overpower such resistance. Now a constable is a minister of justice; and, under our system, a most important one in civil proceedings, being the only officer whose duty it is to execute the numerous writs daily and hourly issued by magistrates, for debts and claims not exceeding one hundred dollars. They fall within the words as well as within the design and meaning of the rule

(Comfort v. Commonwealth.)

established by law, notwithstanding, at the common law, the constable has no authority to execute writs in actions of debt, trover, and others, now given to him by our acts of asssembly; yet, when the legislature substituted him for the sheriff in the exercise of this authority, it may well be considered as having designed to confer on him all the established means and facilities which the policy of the law *before* vested in the sheriff or his bailiff. By the act of 1772, section 6, protection is afforded to any constable or officer, or any person or persons acting by his or their order, and *in his aid*, for any thing done in obedience to *any warrant* under the hand and seal of any justice of the peace; which applies generally, to civil as well as criminal cases, and is somewhat of a recognition of the authority of the constable to call on the *posse* for assistance, in cases where it is ordinarily directed or permitted by law to the sheriff. The permission given by the 13th section of the act of 15th April, 1834, to a constable to appoint a deputy in a civil suit or proceeding, at the request or risk of the plaintiff or his agent, does not supply the necessity of the power in question, since a stubborn and daring defendant might successfully defy the deputy as well as the constable. On the whole, we are of opinion that the constable possesses, in this respect, all the powers conferred by the common law on the sheriff, in cases within the authority given to the constable, and that the indictment well lay against the defendants.

Judgment affirmed.