## Tucker v. Vornbrock et al.

(Decided Nov. 23, 1937.)

WM. A. ARMSTRONG for appellant.

KENDRICK R. LEWIS and RICHARD B. CRAWFORD for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

Clab Tucker sued Frank Vornbrock, policeman, and the Fidelity & Casualty Company of New York, his bondsman, and Leonard F. Wiser, policeman, and the United States Fidelity & Guaranty Company, Incorporated, of Baltimore, Md., his bondsman, for false arrest and imprisonment and sought judgment in the sum of $5,000. A trial was had in the Jefferson circuit court resulting in the court at the conclusion of the testimony of appellant, on motion of appellees, directing the jury to find for the defendants, which the jury did, and plaintiff's action was then by judgment of the court dismissed. Tucker appeals.

The facts are, that on or about 2 o'clock in the morning, on the 16th day of May, 1935, appellant, a citizen of the city of Louisville, Ky., residing on what

is known as Strawberry lane, was arrested by appellees, Frank H. Vornbrock and Leonard F. Wiser. The arrest was made without a warrant and at a time when no offense was committed in their presence, but at a time, when it is contended by appellees that they had reasonable and probable grounds based on appellant's evidence to believe that a felony had been committed.

Section 36, subsection 2, Criminal Code of Practice, provides that a peace officer may make an arrest as follows:

"Without a warrant, when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony."

In fact, a private person may make an arrest under section 37 of the Criminal Code of Practice, as follows:

"A private person may make an arrest, when he has reasonable grounds for believing that the person arrested has committed a felony."

The pivotal question to be decided is, Did the court commit an error in directing the jury to find for the defendants? When a motion is made for a peremptory instruction, the evidence offered is accepted as true. Such a motion is, in fact, a demurrer to the evidence. Then, it follows, Did the evidence presented to the jury, conceding it to be true, authorize under the law a verdict for appellees?

A brief summary of the facts are, that late at night on the 16th day of May, 1935, appellant at his home on Strawberry lane was disturbed by some intruder in his kitchen. There he found a man with a sweater pulled over his head and his hands rolled up in it. He did not know the man. He asked him his name and the only answer was, "Yahay." He then asked him who he was hunting for, and his answer again was "Yahay." He then told him to get out. He did not readily do so, so appellant took his shotgun and pushed him a little toward the door. He then went out of the door and, when he did so, got into the automobile of appellant, which was parked near the door, and tried to start it. Appellant then asked him to get out of the automobile. He did not do so. Appellant, who had a gun, set it down and armed himself with a stick or club and struck the man on the head while in the car. The

stick or club had a nail in it. The wound caused the man to bleed profusely. About that time appellant's brother-in-law, Bryant Morgan, appeared on the scene. He picked up the gun and shot it in the air. The man that had been struck was very drunk, but he got out of the car as quickly as possible and staggered on toward the road. However, other witnesses stated that he went through the garden or potato patch. In a short while after the man was struck, as herein stated, and after the firing of the gun, these policemen came to the home of appellant, seeking no doubt the cause of the trouble, but seeing no one, left and went to the Kenwood Night Club nearby. In a short time, possibly within 15 or 20 minutes, these policemen returned, and at once entered the home of appellant by forcing their way through the door. On entering the home, they made inquiry of Bryant Morgan, the brother-in-law, who with his wife, Carrie Morgan, was living in the house of appellant, as to who shot the gun and also asked him the cause of the shooting, and, further, who struck and wounded the man, and with what they had struck him. At that time appellant came where the policemen were and, on inquiry of him, confessed that he struck the man with a stick on the head. When that information was received appellant and his brother-in-law, Morgan, were told to consider themselves under arrest, and were directed to stay in the room they were in. The officers then went into the kitchen and looked around, but found nothing. Then, at their suggestion, and under their direction, appellant, with his brother-in-law, Morgan, got into the policemen's automobile, and went with them to the night club, which was a short distance from appellant's home. At that place there was an officer, whose name was Shultz. Appellant was then asked some questions about the striking of the man, whose name was not known until that time. He was found to be a man by the name of Edwards. Appellant was not restrained, but was permitted to move about the place as he pleased. He was then turned loose and told to go home, which he did. This is, in substance, the facts pertaining to the alleged arrest.

We think these officers, on the statement of appellant, that he had struck the intruder, who afterwards was known to be a man by the name of Edwards, over the head, causing him to bleed profusely, when he was drunk and practically harmless, had sufficient grounds

and reasons to believe that a felony had been committed. To strike another with a stick or club, a deadly weapon, is a felony, as provided by section 1166, Kentucky Statutes. At least, the information received by these officers was sufficient to justify them to put appellant under arrest for the purpose of making an investigation of the striking of Edwards at that time of night and to find out why the wound on his head was inflicted.

Counsel for appellant rely for a reversal on the following cases: Morton et al. v. Sanders, 178 Ky. 836, 200 S. W. 24; Illinois Cent. R. Co. v. Dennington, 172 Ky. 325, 189 S. W. 217, 220; Klotz v. Cook, 184 Ky. 735, 212 S. W. 917, 918; Miles et al. v. Brown et al. (Dearing et al. v. Brown), 43 Ky. 537, 136 S. W. 1001. In those cases the facts stated are altogether different, as well as the situation of the parties, and are not applicable to the facts in the instant case.

However, we think the case of Klotz v. Cook, supra, lays down a principle of law that, relied on by counsel for appellant, sustains the trial court's judgment. The court said in that case:

"Peace officers may arrest any person whom they, upon reasonable grounds, believe has committed a felony, although it afterwards appears that no felony was actually perpetrated. It is authorized by the section of the Code above referred to. [Section 36, Criminal Code]. It is so stated in the text books and upheld in many decisions of this and other courts. 2 R. C. L. 447; 5 C. J. 399. See note to Leger v. Warren, 51 L. R. A. page 203; Grau v. Forge, 183 Ky. 521 [209 S. W. 369, 3 A. L. R. 642]."

In the Dennington Case, supra, the court said:

"While ordinarily, of course, a confession will furnish probable cause for making an arrest, there may be cases where the arrest is made under such circumstances as to discredit the good faith of the officer making the arrest."

This is true and was true in the Dennington Case for the reasons fully narrated and set out. In that case the boy arrested was only about 14 years of age. The grounds for the arrest were in controversy. In this case we have a man of mature age, alleging in the petition on which his action is based, which appellees did

not deny, that "appellees had reasonable grounds to believe that a felony had been committed," and further confessing to the offense, that he struck the man with a stick or club and did so at a time when he was drunk and practically in a helpless condition; in fact, so drunk that he was unable to answer appellant's question as to his name or purpose of being in his home, except to say, "Yahay." He confessed that he had struck him in that condition with a stick or piece of wood, that doubtless was a deadly weapon. Under such a state of facts, these officers would have been derelict in their duty to the commonwealth to have failed to arrest and take appellant in charge. The evidence is also to the effect that the purpose of taking appellant in charge was to make a full investigation of the cause of the attack on Edwards. Appellant was not imprisoned or incarcerated, but without objection got into the automobile of the arresting officers and went with them to the roadhouse or night club, where Edwards was. At that place he was not molested or restrained to any extent. He was permitted without restraint to move about the place as he wished. The evidence justified the court in reaching the conclusion that the purpose of taking appellant to the roadhouse was to identify Edwards, the man struck. When that was done, he was released. There was no reason to take him before a magistrate. In fact, it was unnecessary to have done so.

The trial court is the judge of what facts constitute probable or reasonable cause authorizing an arrest. In this case, the plaintiff admitted in his pleading that appellees had reasonable grounds to believe that a felony had been committed at the time of the arrest.

We do not think, under the circumstances, there was any violation of section 46 of the Criminal Code of Practice. We perceive no error from the whole of the record in the judgment of the court directing a dismissal of the case.

Judgment affirmed.